IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAIRY AMERICA, INC., | CASE NO. CV F 07-0537 LJO SMS |
| Plaintiff, | **ORDER ON RECONSIDERATION MOTION** (Doc. 105.) |
| vs. | |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, et al., | |
| Defendants. / | |

## INTRODUCTION

Plaintiff Dairy America, Inc. ("Dairy America") seeks reconsideration of summary judgment in favor of its defendant cargo insurer and a defendant insurance underwriter that part of Dairy America's cargo loss is uncovered by a binder or policy to defeat Dairy America's breach of contract claim against the insurer and underwriter. Dairy America faults this Court's treatment of expert testimony on cargo insurance matters and interpretation of an applicable attachment clause. Defendant insurer New York Marine and General Insurance Company ("NY Marine") and defendant underwriter Crump Insurance Services dba Marine & Aviation Underwriters, Inc. ("Southern Marine") respond that Dairy America offers no new points and fails to demonstrate that summary judgment is clearly erroneous and manifestly unjust. This Court considered Dairy America's reconsideration motion on the record and VACATES the July 27, 2009 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DENIES Dairy America reconsideration.

# BACKGROUND

## The Binder And Policy

On August 11, 2005, underwriter Southern Marine for insurer NY Marine issued to Dairy America a binder for an ocean cargo policy. The binder provided that coverage is "BOUND WITH EFFECT FROM AUGUST 11, 2005 TO EXPIRE OCTOBER 1, 2006, BOTH DAYS AT 12:01 A.M. LOCAL STANDARD TIME AT THE PLACE OF ISSUANCE, OCEAN CARGO/STOCK THROUGHPUT COVERAGE SUBJECT TO THE FOLLOWING RATES, PREMIUMS, POLICY TERMS, INSURING CONDITIONS AND LIMITS OF LIABILITY." (Uppercase in original.)

The binder included a "lost or not lost" clause which states in pertinent part:

> 5.   GEOGRAPHICAL LIMITS:
>
> LOST OR NOT LOST, FROM PORTS AND/OR PLACES IN THE WORLD TO PORTS AND/OR PLACES IN THE WORLD DIRECTLY OR VIA PORTS AND/OR PLACES IN ANY ORDER, INCLUDING THE RISK OF TRANSSHIPMENT BY LAND, AIR OR WATER AND INCLUDING WHILE IN STORAGE WORLDWIDE ASHORE OR AFLOAT. THIS INSURANCE SPECIFICALLY COVERS SHIPMENTS BOTH ORIGINATING AND TERMINATING ON LAND WITHIN ANY COUNTRY OF CONTINENT ANYWHERE IN THE WORLD.
>
> . . .
>
> THE INSURANCE ATTACHES FROM THE TIME THE SUBJECT MATTER BECOMES AT THE INSURED'S RISK OR THE INSURED ASSUMES INTEREST OR THE INSURED IS OBLIGATED TO INSURE AND CONTINUES WHILE HELD AS STOCK . . . WHETHER OR NOT IN THE COURSE OF TRANSIT . . .

On August 23, 2005, the ocean cargo policy ("policy") issued to Dairy America and was sent directly to defendant insurance broker Arthur J. Gallagher & Co. ("Gallagher"). The policy included the following attachment clause ("attachment clause"): "This insurance attaches to all shipments commencing on or after August 11, 2005 and prior to October 1, 2006, both days at 12:01 A.M. local standard time at place of insurance." The binder lacked such an attachment clause to limit coverage to shipments commencing on or after August 11, 2005. The policy's geographical limits clause included the first sentence of the binder's lost not lost clause but not its succeeding language.

## Dairy America's Loss And Claim

On August 29, 2005, 59 loads of Dairy America's milk powder located in a Gulfport, Mississippi warehouse and awaiting shipment were destroyed by Hurricane Katrina. The 59 loads comprised 36 loads that had been shipped after the August 11, 2005 policy coverage inception and 23 loads shipped

prior to August 11, 2005.

Gallagher, for Dairy America, presented a claim to Southern Marine for the 59 lost loads. NY Marine's investigation concluded that 23 loads were not covered in that the loads' transit preceded the policy's inception. NY Marine paid Dairy America $1,511,360 for 36 loads which began transit after the policy's inception. Dairy America's claim for the 23 pre-policy inception loads is $971,980.

Dairy America pursued a breach of contract claim against NY Marine and Southern Marine to recover $971,980 for pre-August 11, 2005 transit loads on grounds that that the binder does not exclude "goods in transit at the coverage inception date," and that "all 59 loads of powdered milk product are covered by the policy."

NY Marine and Southern Marine sought summary judgment that the attachment clause barred coverage for shipment in transit prior to the policy's August 11, 2005 inception in that the binder neither expresses an intent to cover goods already in transit nor contradicts the policy. This Court identified the key issue as "whether the binder's scope includes the 23 pre-August 11, 2005 transit loads." Relying on cargo insurance points raised by Southern Marine senior vice president Andrew Fossler ("Mr. Fossler"), this Court granted NY Marine and Southern Marine summary judgment and concluded that shipments in transit prior to policy inception were at Dairy America's risk and that the declarations of Dairy America and Gallagher's experts raised no factual issues to defeat summary judgment.

## DISCUSSION

### Reconsideration Standards

Dairy America seeks reconsideration in that this Court's decision "is clearly erroneous, and manifestly unjust because it is contrary to law." Dairy America criticizes this Court's treatment of the parties' expert opinions and interpretation of the binder and policy.

A basic principle of federal practice is that courts generally refuse to reopen decided matters. *Magnesystems, Inc. v. Nikken*, 933 F.Supp. 944, 948 (C.D. Cal. 1996). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). A reconsideration motion "should not be granted absent highly unusual circumstances." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972 (1989). A reconsideration motion "is not a

vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2nd Cir. 1998).

However, either the moving or opposing party may seek reconsideration of a summary judgment ruling. *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir.), *cert. denied*, 493 U.S. 868, 110 S.Ct. 192 (1989). Reconsideration is appropriate if the district court: (1) is presented with newly discovered evidence; (2) has committed clear error or the initial decision was manifestly unjust; or (3) is presented with an intervening change in controlling law. *School District 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742 (1994). There may be other highly unusual circumstances warranting reconsideration. *School District 1J*, 5 F.3d at 1263.

A motion for reconsideration of a summary judgment/adjudication ruling is restricted:

> Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. *Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time.*

*Publisher's Resource, Inc. v. Walker Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665-666 (N.D. Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir. 1984) (italics in original)); *see Novato Fire Protection Dist. v. United States*, 181 F.3d 1135, 1142, n. 6 (9th Cir. 1999), *cert. denied*, 529 U.S. 1129, 120 S.Ct. 2005 (2000). Reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Reconsideration should not be used "to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *See Brambles USA, Inc. v. Blocker*, 735 F.Supp. 1239, 1240 (D. Del. 1990). Under this Court's Local Rule 78-230(k), a party seeking reconsideration must demonstrate "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion" and "why the facts or circumstances were not shown at the time of the prior motion."

With these standards in mind, this Court turns to Dairy America's challenges to summary judgment for NY Marine and Southern Marine.

**Expert Opinion**

As Dairy America notes, this Court pointed to Mr. Fossler's opinions and explained:

> Dairy America and Gallagher fail to challenge meaningfully Mr. Fossler's points regarding industry standards and expectations as to ocean cargo policies. Mr. Fossler makes a keen, undisputed observation that the "business and insurance reason and practice of why goods whose transit begins prior to the inception of the policy are not covered within the cargo policy is that the underwriter would never know what goods were in transit or where the transit may have begun." More importantly, as noted by Mr. Fossler, "the underwriter would have no way of knowing whether or not products such milk powder could have been damaged, adulterated, lost, or stolen." Mr. Fossler's uncontradicted points are valid to support that shipments in transit prior to policy inception are "at the risk of the insured's prior insurer or at the insured's own risk."

Dairy America argues that its expert John Adams ("Mr. Adams"), a marine and surplus lines insurance executive, disputed Mr. Fossler's observations to raise a dispute to defeat summary judgment. In his declaration, Mr. Adams opined:

> . . . A "Lost or Not Lost" clause as used in ocean marine insurance provides that insurance will pay even if the loss insured against has occurred prior to the effective date of the insurance.
>
> Inclusion of the "Lost or Not Lost" clause by NMY/SMA is permissive language, which indicated that the parties anticipated that coverage would be provided for shipments already in transit and not yet declared, and functions to broaden further the Binder and Policy's coverage.

Dairy America further points to the opinion of Gallagher's insurance coverage attorney Erwin Adler ("Mr. Adler") that all of Dairy America's loss is covered under the binder.

Dairy America argues without citation to legal authority that "[a]s evidenced by the competing expert testimony filed in conjunction with the Motion, there exists disputed issues of material fact." In its reply papers, Dairy America notes that Mr. Adams and Mr. Alder's declarations "support the inference that New York Marine and Southern Marine were obligated by the insurance to cover the 23 loads of product for which they denied coverage."

Taken to an extreme, Dairy America's position would preclude summary judgment in any action involving opposing expert opinion. Dairy America offers no authority for its novel approach.

Moreover, the opinions on which Dairy America rely are borderline inadmissible legal conclusions. A qualified expert witness may testify "in the form of an opinion or otherwise" when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

5

evidence or to determine a fact in issue." F.R.Evid. 702.

F.R.Evid. 704 permits opinion testimony on ultimate issues and provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Whether expert opinion is "otherwise admissible" depends, in part, on whether it will "assist the trier of fact" to understand the evidence or to determine a fact in issue. *Burkhart v. Washington Metropolitan Area Transit Authority*, 112 F.3d 1207, 1212, (D.C. Cir. 1997); *see* F.R.Evid. 702.

Expert legal conclusions (i.e., opinions on an ultimate issue of law) cannot properly assist the trier of fact to understand the evidence or to determine a fact in issue and thus are not otherwise admissible. *Burkhart*, 112 F.3d at 1212; *see Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066, n. 10 (9th Cir. 2002) ("an expert witness cannot give an opinion as to her legal conclusion"); *Weston v. WMATA*, 78 F.3d 682, 684 n. 4 (D.C. Cir. 1996) ("legal conclusions on domestic law . . . are outside [an expert's] area of expertise"); *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (expert testimony couched as a "legal conclusion" is "not helpful to the jury"). "When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994) (italics in original). F.R.Evid. 704 does not permit "opinions which would merely tell the jury what result to reach" or which are "phrased in terms of inadequately explored legal criteria." F.R.Evid. 704 Adv. Comm. Note; *see Weston*, 78 F.3d at 684, n. 4 (an expert cannot testify as to whether "discrimination" occurred for Title VII purposes).

An "expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Burkhart*, 112 F.3d at 1207 *See Crow Tribe of Indians v. Raciot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (expert testimony is improper for issues of law because the role of experts is to interpret and analyze factual evidence and not testify about the law). The Advisory Notes to F.R.Evid. 704 (opinion on ultimate issue) are helpful and note:

> The abolition of the ultimate issue rule does not lower the bar so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford

ample assurance against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to made a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed. McCormick, § 12.

The gist of Mr. Adams and Mr. Adler's opinions upon which Dairy America relies is that the binder covered the pre-August 11, 2005 transit loads. Mr. Fossler's opinions, referenced by this Court, addressed standard practice for ocean cargo insurance, not a legal interpretation of the binder and policy. Dairy America fails to substantiate their reliance on Mr. Adams and Mr. Adler's opinions to unwind summary judgment. NY Marine and Southern Marine correctly note that this Court considered Mr. Adams and Mr. Adler's opinions on summary judgment and that Dairy America offers nothing new to support their opinions.

**Dairy America's Expectations**

To oppose summary judgment, Dairy America argued that it was entitled to binder coverage that it reasonably expected, that is, coverage for all loads in transit as of August 11, 2005. To address this argument, this Court explained:

> Dairy America points to no meaningful authority that it is entitled to rely on its expected coverage. There is no evidence that Dairy America's controller Ms. McAbee or anyone else at Dairy America read the binder. The evidence is that Dairy America relied on Gallagher. In fact, Ms. McAbee declares Dairy America "relied" on Gallagher and NY Marine/Southern Marine "to explain the limitations and exclusions of such coverage." Purported reliance on NY Marine and Southern Marine is misplaced in that Gallagher acted as Dairy America's broker.

To support reconsideration, Dairy America argues that the evidence supports a "reasonable inference" that "Dairy America must have read and relied on the binder to understand" that the binder covered all milk powder in transit. NY Marine and Southern Marine respond that this "Court carefully considered the relationship between the parties and concluded correctly that Dairy America offered no meaningful authority that it was entitled to rely on New York Marine or Southern Marine 'to explain the limitations and exclusions of its coverage.'"

Dairy America's points regarding testimony of its controller Jean McAbee ("Ms. McAbee") add nothing. Dairy America failed to support its position that it was entitled to rely on coverage it expected despite whether Ms. McAbee or anyone else at Dairy America read the binder. The import of the

7

1  evidence was that Dairy America relied on its broker Gallagher regarding coverage in the absence of NY
2  Marine and Southern Marine's direct communication and negotiation with Dairy America. Comments
3  regarding Ms. McAbee's failure to read the binder address Dairy America's reliance on Gallagher and
4  nothing more. Whether Ms. McAbee read the binder creates no issue of material fact to defeat summary
5  judgment.

### Lost Or Not Lost Clause

Dairy America criticizes this Court's analysis of the binder's lost not lost clause which Dairy America claims is ambiguous with the policy's attachment clause. Dairy America criticizes this Court for not ruling "whether the contract of insurance was ambiguous." Dairy America argues that inclusion of lost not lost language in the policy and binder reflects "that coverage would be provided for shipments already in transit and not yet declared" to reinforce the parties' intention to cover the 23 pre-August 11, 2005 transit loads.

Dairy America offers no meaningful authority or points to support that the binder's lost or not lost clause obligates NY Marine and Southern Marine to cover the 23 pre-August 11, 2005 transit loads. The policy's attachment clause is clear as to when the coverage attaches. The lost or not lost clause addresses geographical limits of coverage, not the time of attachment. If there were an ambiguity, this Court could not have awarded NY Marine and Southern Marine summary judgment and thus found no ambiguity to defeat summary judgment. Moreover, similar to its summary judgment opposition, Dairy America offers nothing to challenge meaningfully Mr. Fossler's points regarding ocean cargo insurance standards, especially his rationale why insurance does not attach to loads in transit prior to policy inception. Dairy America's displeasure with summary judgment is sufficient to warrant reconsideration.

### Attorney Fees And Costs

NY Marine and Southern Marine request attorney fees to oppose Dairy America's reconsideration motion. NY and Southern Marine demonstrate no grounds to support an award of attorney fees and costs, especially given its brief opposition and this Court's vacating the hearing.

/ / /

/ / /

/ / /

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court DENIES Dairy America reconsideration and NY Marine and Southern Marine's request for attorney fees and costs.

IT IS SO ORDERED.

**Dated:   July 21, 2009**                                /s/ Lawrence J. O'Neill
                                                                          UNITED STATES DISTRICT JUDGE